**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| JENNIFER RUSH, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HONEST PEST SERVICES LLC<br><br>Defendant. | Case No. 4:26-cv-02580<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S**
**<u>RULE 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS.</u>**

## TABLE OF CONTENTS

INTRODUCTION .......... 1

BACKGROUND .......... 2

NATURE AND STAGE OF THE PROCEEDING, ISSUE PRESENTED, AND STANDARD OF REVIEW .......... 3

ARGUMENT .......... 3

I. Section 227(c)'s Private Right of Action Encompasses Telemarketing Text Messages .......... 3

- a. The plain meaning of the word "call" includes text messages .......... 5
- b. That interpretation of the word "call" aligns section 227(c)'s private right of action with its substantive provisions .......... 13
- c. The other Federal Courts in Texas and elsewhere in the Fifth Circuit that have considered this question got it right .......... 15

CONCLUSION .......... 17

## TABLE OF AUTHORITIES

**Cases**

*Abbas v. Selling Source, LLC*, 2009 WL 4884471 (N.D. Ill. Dec. 14, 2009) ....................... 6

*Alvarez v. Fiesta Nissan, Inc.*, 2026 U.S. Dist. LEXIS 14155 (S.D. Tex. Jan. 26, 2026) .. 1, 4, 11, 15–16

*Bradford v. Sovereign Pest Control of Texas, Inc.*, 167 F.4th 809 (5th Cir. 2026).......... 3, 11–12

*Callier v. American Auto Group LLC*, 2026 U.S. Dist. LEXIS 120642 ............................. 16

*Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016) ...................................................... 1, 5

*Cacho v. McCarthy & Kelly LLP*, 739 F. Supp. 3d 195 (S.D.N.Y. 2024) ........................... 14

*Duron v. Kings Capital Holding*, 2026 U.S. Dist. LEXIS 6340 (W.D. Tex. Jan. 13, 2026).. 1, 4, 17

*FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120 (2000) ..................................... 9

*Gustafson v. Alloyd Co.*, 513 U.S. 561 (1995) ........................................................................ 9

*Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258 (2014) ...................................... 10

*Harriel v. Bealls, Inc.*, 2025 WL 2379617 (M.D. Fla. 2025) ................................................ 14

*Henson v. Santander Consumer USA Inc.*, 582 U.S. 79 (2017) ............................................. 6

*Howard v. Republican National Committee*, 164 F.4th 1119 (9th Cir. 2026).. 1, 4–6, 11–13, 15

*John R. Sand & Gravel Co. v. United States*, 552 U.S. 130 (2008) ...................................... 11

*Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365 (6th Cir. 2015) .................................... 7

*Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024) .................... 1, 3–4, 7, 11, 13, 16

*Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999 (N.D. Ill. 2010) ............... 6

*McGonigle v. ShoppersChoice.com, L.L.C.*, 2026 U.S. Dist. LEXIS 30157 (M.D. La. Feb. 13, 2026) ........................................................................................................................... 1, 4, 16

*Mujahid v. Newity, LLC*, 2025 WL 3140725 (N.D. Ill. Nov. 10, 2025) .............................. 6, 15

*Pennsylvania Department of Corrections v. Yeskey*, 524 U.S. 206 (1998) .............................. 8

*Perrin v. United States*, 444 U.S. 37 (1979) .......................................................................... 5

*Q Clothier New Orleans, L.L.C. v. Twin City Fire Insurance Co.*, 29 F.4th 252 (5th Cir. 2022) ............................................................................................ 3

*Rabbitt v. Rohrman Midwest Motors, Inc.*, 2026 WL 851279 (N.D. Ill. Mar. 27, 2026) ... 9–11

*Rush v. SelectQuote Insurance Services, Inc.*, 2026 U.S. Dist. LEXIS 182934 (W.D. Mo. July 30, 2026) .................... 11

*Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009) .................... 5–6, 15

*Skidmore v. Swift & Co.*, 323 U.S. 134 (1944) .................... 4

*Soliman v. Subway Franchisee Advertising Fund Trust, Ltd.*, 101 F.4th 176 (2d Cir. 2024)..12, 14

*Steidinger v. Blackstone Medical Services, LLC*, 182 F.4th 532 (7th Cir. 2026) .... 1, 5, 11–13, 16

*Taha v. Momentive Software, Inc.*, 2026 U.S. Dist. LEXIS 54376 (C.D. Cal. Mar. 11, 2026)... 8

*Trim v. Reward Zone USA LLC*, 76 F.4th 1157 (9th Cir. 2023) .................... 12, 14

*Warciak v. Subway Restaurants, Inc.*, 949 F.3d 354 (7th Cir. 2020) .................... 6

*Wilson v. Better Mortgage Corp.*, 811 F. Supp. 3d 631 (S.D.N.Y. 2025) .................... 13

*Wilson v. MEDvidi Inc.*, 2025 WL 2856295 (N.D. Cal. Oct. 7, 2025) .................... 7, 13, 15

**Statutes**

Telephone Consumer Protection Act, 47 U.S.C. § 227 .................... passim

47 U.S.C. § 227(a)(3) .................... 13

47 U.S.C. § 227(a)(4) .................... 8

47 U.S.C. § 227(b)(1)(A)(iii) .................... 6, 12

47 U.S.C. § 227(b)(1)(B) .................... 8, 12

47 U.S.C. § 227(c)(1) .................... 9, 15

47 U.S.C. § 227(c)(3)(F) .................... 14

47 U.S.C. § 227(c)(5) .................... passim

47 U.S.C. § 227(e)(8)(C) .................... 14

47 U.S.C. § 227(i) .................... 11

**Rules and Regulations**

Fed. R. Civ. P. 12(b)(6) .................... 3

Fed. R. Civ. P. 12(c) .................... 3, 17

47 C.F.R. § 64.1200(c) .................... 2–3

47 C.F.R. § 64.1200(e) ........................................................................................ 9, 14

**Administrative Materials**

*In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*,
18 FCC Rcd. 14014 (2003) ........................................................................... 6–7, 14

30 FCC Rcd. 7961 (2015) ........................................................................................ 7

38 FCC Rcd. 12247 (2023) ...................................................................................... 7

88 Fed. Reg. 20800 (Apr. 7, 2023) ........................................................................ 7

*In the Matter of Emanuel "Manny" Hernandez*,
2018 WL 6830220 (FCC Dec. 21, 2018) ............................................................... 7

**Other Authorities**

*Black's Law Dictionary* (6th ed. 1990) ................................................................... 14

David Crystal, *Txtng: The Gr8 Db8* (2008) ............................................................ 7

Meghan Keane, *Texting Overtakes Voice in Mobile Phone Usage*,
Wired (Sept. 29, 2008) ........................................................................................... 7

*Oxford English Dictionary* (2d ed. 1989) .................................................... 5, 7, 15

*Random House Dictionary of the English Language*
(2d ed. 1987) .......................................................................................................... 7

*Random House Webster's College Dictionary*
(1991) ............................................................................................................... 5, 15

*Webster's Ninth New Collegiate Dictionary*
(1991) ..................................................................................................................... 7

**INTRODUCTION**

Defendant's Motion asks this Court to adopt a newly minted interpretation of the TCPA that would remove text messages from the protections of the National Do-Not-Call Registry. Under Defendant's theory, a consumer who affirmatively registers her residential telephone number on the Registry may nevertheless receive unlimited unsolicited telemarketing text messages to that number because Congress used the words "telephone call" in § 227(c)(5) in 1991 before text messages existed. Neither the statutory text nor the governing authority supports that result.

Defendant relies principally on the Seventh Circuit's recent decision in *Steidinger v. Blackstone Medical Services, LLC*, 182 F.4th 532 (7th Cir. 2026). But *Steidinger* is neither controlling nor persuasive. The Ninth Circuit recently reached the opposite conclusion in *Howard v. Republican National Committee*, 164 F.4th 1119 (9th Cir. 2026), holding that the ordinary meaning of "call" encompasses text messages. The Supreme Court has likewise recognized that "[a] text message to a cellular telephone . . . qualifies as a 'call'" under the TCPA. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016). And since *Loper Bright Enterprises v. Raimondo*, courts throughout the Fifth Circuit have independently examined the statutory language and consistently concluded that § 227(c) applies to text messages. *See, e.g.*, *Alvarez v. Fiesta Nissan, Inc.*, 2026 U.S. Dist. LEXIS 14155, at *10–17 (S.D. Tex. Jan. 26, 2026); *McGonigle v. Shopperschoice.com*, 2026 U.S. Dist. LEXIS 30157, at *13–14 (M.D. La. Feb. 13, 2026); *Duron v. Kings Capital Holding*, 2026 U.S. Dist. LEXIS 6340, at *12 (W.D. Tex. Jan. 13, 2026). Defendant asks this Court to reject that authority.

## BACKGROUND

Plaintiff Jennifer Rush is the regular and sole user of her only cellular telephone number. ECF No. 1 ¶ 14. She uses that number exclusively for personal and residential purposes, including communicating with friends and family, scheduling personal appointments, and conducting household affairs. *Id.* ¶¶ 15–23. Plaintiff does not maintain a separate residential landline, personally pays for her cellular service, and has never used or associated the number with any business or commercial activity. *Id.* Her number has been registered on the National Do Not Call Registry since January 1, 2008. *Id.* ¶ 17.

Despite that registration, Defendant Honest Pest Services LLC sent Plaintiff at least four unsolicited text messages promoting its pest-control services. *Id.* at 5–7. The messages identified Defendant by name, advertised a "FREE inspection" and an initial service for $49.99, described Defendant's purported work in Plaintiff's neighborhood, and included a link to Defendant's Google reviews. *Id.* at 5–6. Although the messages were addressed to "Polly," Plaintiff is not Polly, does not know anyone by that name associated with the messages, never provided her number to Defendant, and never requested information or promotional materials from Defendant. *Id.* at 7. Plaintiff further alleges that she did not consent to receive the messages. *Id.*

The unwanted solicitations invaded Plaintiff's privacy, intruded upon her daily life, and caused the precise nuisance and disturbance that the TCPA's do-not-call protections were enacted to prevent. *Id.* Plaintiff accordingly filed this putative class action on March 31, 2026, alleging that Defendant violated 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c) by transmitting more than one telephone solicitation within a twelve-month period to a personal and residential telephone number registered on the National Do Not Call Registry. ECF No. 1 ¶¶ 24–32. Plaintiff brings the claim on behalf of herself and a proposed nationwide class of persons

who similarly received multiple solicitation voice or text messages promoting Defendant's services without providing their telephone numbers to Defendant. *Id.* at 7–10.

**NATURE AND STAGE OF THE PROCEEDING,**
**ISSUE PRESENTED, AND STANDARD OF REVIEW**

Plaintiff filed this putative class action on March 31, 2026, alleging that Defendant violated 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c) by sending multiple unsolicited telemarketing text messages to her personal and residential telephone number while that number was registered on the National Do Not Call Registry. ECF No. 1. Defendant answered on April 23, 2026. ECF No. 7. After the pleadings closed, Defendant filed the present Motion for Judgment on the Pleadings under Federal Rule of Civil Procedure 12(c). ECF No. 16.

The issue presented is whether a telemarketing text message constitutes a "telephone call" for purposes of § 227(c)(5). A Rule 12(c) motion is governed by the same standard as a Rule 12(b)(6) motion. *Q Clothier New Orleans, L.L.C. v. Twin City Fire Insurance Co.*, 29 F.4th 252, 256 (5th Cir. 2022). The Court must accept Plaintiff's well-pleaded factual allegations as true, view those allegations in the light most favorable to Plaintiff, and draw all reasonable inferences in her favor. *Id.* Judgment on the pleadings is appropriate only when the plaintiff has failed to plead a legally cognizable claim. *Id.* Because Defendant's Motion turns exclusively on statutory interpretation, the Court must determine the meaning of § 227(c)(5) using the traditional tools of statutory construction. *See Bradford v. Sovereign Pest Control of Texas, Inc.*, 167 F.4th 809, 812–13 (5th Cir. 2026).

## ARGUMENT

### I. Section 227(c)'s Private Right of Action Encompasses Telemarketing Text Messages.

Defendant contends that a single use of the word "call" in section 227(c)(5)'s private right of action means that the DNC rules cannot apply to text messages. That's incorrect.

As courts and the FCC have long and recently recognized, the statute's ordinary meaning, structure, and purpose refute that argument: The word "call" as used in the TCPA refers to any attempt to communicate by telephone, so the FCC may prohibit telemarketing texts to numbers on the Do Not Call List. And Defendant's arguments for its restrictive interpretation all fail. The company goes about interpreting the word "call" in section 227(c)(5) all wrong, appearing to invent statutory terms to support its arguments, and assigning "call" a meaning that is at odds with the rest of the statute in multiple ways. Plaintiff does not ask the Court to defer to the FCC's interpretation as controlling. The Court must exercise independent judgment using the traditional tools of statutory construction. But *Loper Bright* confirms that a longstanding agency interpretation may possess persuasive force and constitute an "informed judgment to which courts and litigants may properly resort for guidance." 603 U.S. 369, 388 (2024) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). The FCC's consistent treatment of texts as calls since 2003 therefore reinforces the conclusion independently supplied by the statutory text, context, and ordinary meaning.

It should come as no surprise then that Post *McLaughlin* and *Loper Bright*, the majority of courts have concluded that under the TCPA text messages are calls.[1] Courts in more than thirteen districts, and until recently, the only circuit court to have squarely addressed the issue—the Ninth Circuit—have held that the DNCR provision covers text messages. *See Howard v. Republican Nat'l Comm.*, 164 F.4th 1119 (9th Cir. Jan. 13, 2026) (reaffirming text messages are "calls"). The Supreme Court has also weighed in on the issue in the context of the TCPA's

[1] *See, e.g., Duron v. Kings Capital Holding,* 2026 U.S. Dist. LEXIS 6340, at *12 (W.D. Tex. Jan. 13, 2026); *McGonigle v. Shopperschoice.com,* 2026 U.S. Dist. LEXIS 30157, at *13–14 (M.D. La. Feb. 13, 2026); *Alvarez v. Fiesta Nissan, Inc.,* 2026 U.S. Dist. LEXIS 14155, at *10–17 (S.D. Tex. Jan. 26, 2026).

robocalls provision. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call.'")—a proposition so uncontroversial that it was not even contested by the parties there. The Seventh Circuit's recent, lone departure in *Steidinger* does not disturb that consensus. As explained below, *Steidinger*'s reasoning does not withstand scrutiny, conflicts directly with *Howard*, and has no application within this Circuit, where the district courts have spoken with one voice in reaching the opposite conclusion.

**a. The plain meaning of the word "call" includes text messages**

The starting point is the statute's text, which confirms that "call" includes text messages. To interpret a statutory term, courts look to the ordinary meaning of the word near in time to the statute's enactment, including by looking at contemporaneous dictionaries. *See e.g. Perrin v. United States*, 444 U.S. 37, 42, 100 S. Ct. 311, 62 L. Ed. 2d 199 (1979) ("A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning. Therefore, we look to the ordinary meaning of the term . . . at the time Congress enacted the statute . . . . " (citation omitted)).

Courts have long recognized that the ordinary meaning of "call" in the TCPA is "to communicat[e] with or an attempt to get in communication with a person by telephone." *Howard*, 164 F.4th at 1123–24 (quoting *Satterfield*, 569 F.3d at 953–54 & n.3). Contemporaneous dictionaries confirm that meaning. *See, e.g.*, *Random House Webster's College Dictionary* (1991) ("to communicate or try to communicate with by telephone"); *Oxford English Dictionary* (2d ed. 1989) ("a summons or communication by telephone"). Those definitions do not require an oral communication; they turn on the means of communication—the telephone. A text message sent to a telephone therefore falls comfortably within the ordinary meaning of a "call." *See Howard*, 164 F.4th at 1123–24.

The established definition of "telephone call" in the TCPA therefore readily encompasses texts. Indeed, both the Seventh and Ninth Circuits have said, in cases alleging violations of section 227(b), that "[t]ext messages to a cellular telephone qualify as a 'call' within the meaning of the statute." *Warciak v. Subway Rests., Inc.*, 949 F.3d 354, 356 (7th Cir. 2020); *see Howard*, 164 F.4th at 1123–24; *Satterfield*, 569 F.3d at 954. And, absent contrary evidence, a statutory word or phrase is presumed to bear a consistent meaning throughout a statute. *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 85 (2017). So, the consensus meaning of the word "call" in section 227(b), as encompassing texts, "supports the interpretation that the term 'call' as used in § 227(c) also encompasses 'text messages.'" *Mujahid*, 2025 WL 3140725, at *2.

The meaning of the word "call" is especially clear in the nearby autodialer provisions in section 227(b) of the original TCPA. The word "call" is used extensively in those provisions prohibiting automatic dialing technology and robocalls. Most notably, section 227(b) prohibits using autodialer or robocall technology "to make any call … to any telephone number assigned to a paging service." 47 U.S.C. § 227(b)(1)(A)(iii). A typical paging device in the early 1990s would have displayed an incoming message as written text—usually displaying a phone number to call. So the use of the word "call" in connection with pagers in section 227(b) establishes "that the term 'call' cannot invoke only the common usage … in which a 'call' refers to oral communication between two parties via telephone." *Lozano*, 702 F. Supp. 2d at 1005; *see also Abbas v. Selling Source, LLC*, No. 09 Civ. 3413, 2009 WL 4884471, at *4 (N.D. Ill. 2009).

The FCC has long endorsed that interpretation of the word "call." The agency determined as early as 2003 that when the TCPA says "call," it must mean not just traditional voice calls but also text messages. 18 FCC Rcd. 14014, 14115 ¶ 165 (Jul. 3, 2003). As the FCC recognized then, the statutory text "encompasses both voice calls and text calls to wireless numbers." *Id.* And the FCC

has adhered to that position ever since. *See* 30 FCC Rcd. 7961, 8020 ¶¶ 115–16; *Hernandez*, 2018 WL 6830220, at *1 ¶ 3*;* 88 Fed. Reg. 20800, 20802 ¶ 6; 38 FCC Rcd. 12247, 12256–57 ¶ 26.

If anything, even though it is only briefly discussed in the relevant order, the FCC's 2003 interpretation of the word "call" to include texts is especially helpful to understanding the word's original meaning as of 1991. *See* 18 FCC Rcd. at 14115 ¶ 165. When Congress originally drafted the TCPA, text messages were not yet mainstream. *See Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 370 (6th Cir. 2015); *Medvidi*, 2025 WL 2856295, at *2. And texting didn't achieve widespread popularity until the 2000s.[2] So the FCC's understanding of "call" in 2003 surely approximated its 1991 meaning more closely than our 2025 intuitions, which reflect a world where texting has been ubiquitous for decades. *Cf. Raimondo*, 603 U.S. at 386 ("[T]he contemporaneous construction of those who were called upon to act under the law, and were appointed to carry its provisions into effect, is entitled to very great respect.").

Nor does § 227(c)(5)'s use of "telephone call," rather than simply "call," change the analysis. The contemporaneous dictionaries on which Defendant itself relies did not define a "telephone call" as necessarily involving voice communication. They defined "call" as communicating or attempting to communicate "by telephone." *See*, *e.g.*, Webster's Ninth New Collegiate Dictionary (1991); Random House Dictionary of the English Language (2d ed. 1987). "Telephone" therefore identifies the medium of the communication; it does not impose an unwritten voice requirement. A text message sent by telephone remains a communication by telephone.

---

[2] *See, e.g.*, David Crystal, *Toting: The Gr8 Db8* 4 (2008), https://perma.cc/M2Q3-FH44 ("The average number of texts per GSM customer in 1995 was 0.4 per month; by the end of 2000 it was still only 35."); Meghan Keane, *Texting Overtakes Voice in Mobile Phone Usage*, Wired (Sept. 29, 2008), https://perma.cc/CB7E-EZQZ (noting that the number of text messages surpassed the number of voice calls for the first time in 2007).

Defendant's historical argument is internally inconsistent. It emphasizes that text messaging did not exist when Congress enacted the TCPA, yet asks the Court to conclude that Congress deliberately chose to protect consumers from voice solicitations while withholding protection from texts. Congress could not have consciously calibrated the statute to distinguish between two technologies when one of them did not yet exist. The emergence of a new technology falling within the ordinary meaning of an enacted term demonstrates the statute's breadth, not ambiguity. *See Pennsylvania Department of Corrections v. Yeskey*, 524 U.S. 206, 212 (1998) ("[T]he fact that a statute can be applied in situations not expressly anticipated by Congress demonstrates breadth."). Had Congress intended § 227(c)(5) to require an audible communication, it could have said "voice call," as it did elsewhere when sound mattered. *See Taha v. Momentive Software, Inc.*, 2026 U.S. Dist. LEXIS 54376, at *7–8 (C.D. Cal. Mar. 11, 2026).

Honest Pest' principal textual argument is that Sections 227(c)(1) through (c)(4) use the defined term "telephone solicitation," which Congress defined to mean "the initiation of a telephone call or message . . . which is transmitted to any person," 47 U.S.C. § 227(a)(4) (emphasis added), while Section 227(c)(5)'s private right of action refers only to a "telephone call." In Honest Pest' view, that variation shows Congress deliberately excluded text messages from the private right of action, and reading "call" to reach text messages would render the word "message" in Section 227(a)(4) surplusage. The argument does not withstand scrutiny.

*First*, "call" and "message" are not mutually exclusive terms whose overlap creates surplusage. Section 227(b)(1)(B) itself regulates a "telephone call" made "to deliver a message" to a residential line. 47 U.S.C. § 227(b)(1)(B). Congress thus used "call" throughout Section 227 to describe the vehicle of communication—a transmission placed to a telephone number—without regard to whether the content delivered was spoken or written. A text message is a "call"

under that usage because it is a communication transmitted between telephones; Section 227(a)(4)'s addition of "or message" clarifies that a telephone solicitation can be made by call or by message, not that "call" and "message" name two mutually exclusive categories that a legislature drafting in 1991 carefully policed.

*Second*, and more fundamentally, Section 227(c)(5)'s private right of action does not stand on its own; it is triggered by a violation of "the regulations prescribed under this subsection," 47 U.S.C. § 227(c)(5)—that is, the regulations the FCC promulgated under Section 227(c)(1) to "protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." *Id.* § 227(c)(1). Those regulations expressly reach telemarketing text messages sent to wireless numbers. 47 C.F.R. § 64.1200(e). Section 227(c)(5) "must be read in [the] context of the referenced 'regulations' that are mandated by § 227(c)(1)." *Rabbitt v. Rohrman Midwest Motors, Inc.*, No. 25 C 11312, 2026 WL 851279, at *3 (N.D. Ill. Mar. 27, 2026) (citing *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) ("the words of a statute must be read in their context and with a view to their place in the overall statutory scheme")); *see also Gustafson v. Alloyd Co.*, 513 U.S. 561, 569 (1995) (a statute should "be interpreted as a symmetrical and coherent regulatory scheme"). Confronted with the identical argument Honest Pest makes here, the *Rabbitt* court explained that a defendant's position—that the Section 227(c)(5) private right of action extends only to the subset of Section 227(c)(1)'s regulations that happen to concern voice calls—asks the court to accept "that when Congress created a private right of action tied to violations of the 'regulations' promulgated under § 227(c)(1), it intended the private right of action to extend only to regulations concerning 'telephone call[s].'" *Id.* But "defendant offers no explanation as to why this would be the case," and the technological backdrop only "makes defendant's reading of the statute more confusing,"

since it would require Congress to have intended a distinction between voice calls and text-inclusive "telephone solicitations" in 1991—"when there was no difference between these concepts" because text messaging did not yet exist. *Id.* Honest Pest, like the defendant in *Rabbitt*, "has not provided a rationale explaining why Congress would make such a distinction or provided any legislative history supporting the proposition that Congress did make this distinction." *Id.* The better reading recognizes the private right of action as "part of a statutory scheme that provides a private right of action to individuals who are the victims of multiple violations of the regulations promulgated by the FCC under § 227(c)(1)," and a court "cannot accept defendant's reading" where it "would undercut Congress's otherwise coherent regulatory scheme for a reason that neither defendant nor th[e] court can articulate." *Id.*

*Third*, Honest Pest' negative-inference argument—that Congress's amendment of other TCPA provisions to reference text messages while leaving Section 227(c) untouched shows an intent to exclude texts from Section 227(c)—was raised and rejected on nearly identical facts in *Rabbitt*. There, the defendant argued that Congress "reaffirmed that Section 227(c) only relates to telephone calls, not text messages, because it has twice amended other provisions of the TCPA to explicitly reference text messages but chose not to amend 227(c) for those purposes." *Id.* at *4. The court was "not persuaded," reasoning that because "the regulatory history and case law" applying subsection (c) to text messages predated those amendments, Congress's decision not to disturb Section 227(c) "can be read to represent exactly the opposite of what defendant advocates": having "the option to take affirmative action to exclude text messages from § 227(c)'s coverage" and declining to do so, Congress's inaction is best read "as an acceptance of the existing case law and regulations that applied § 227(c) to text messages." *Id.* That reading, the court explained, is "in harmony with the oft-repeated principle that statutory stare decisis is

particularly strong, because Congress can change what the courts have concluded." *Id.* (citing *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 274 (2014) ("[T]he principle of stare decisis has special force in respect to statutory interpretation because Congress remains free to alter what we have done."); *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 139 (2008) (similar)). The same is true of the TRACED Act's 2019 addition of text-message language to Section 227(i): rather than showing that Congress believed the pre-existing term "telephone call" in Section 227(c)(5) already excluded text messages, it shows Congress legislating against a backdrop—the FCC's application of subsection (c) to texts since 2003—that it left undisturbed. Honest Pest offers no reason Congress would have wanted the anomalous result its reading requires: that "telephone call" in Section 227(c)(5) means a voice call only, while the same subsection's "telephone solicitation" covers a broader category that plainly reaches text messages.

Defendant's reliance on *Rush v. SelectQuote Insurance Services, Inc.*, No. 6:26-cv-03157-MBB, 2026 U.S. Dist. LEXIS 182934 (W.D. Mo. July 30, 2026), adds no independent force to its argument. The identity of the plaintiff cannot determine the meaning of a federal statute. *SelectQuote* adopted the same reasoning as *Steidinger* and is nonbinding for the same reasons. It also does not reconcile its voice-dependent understanding of "telephone call" with *Howard*'s treatment of a text message as a "telephone call" under § 227(b)(1)(B). This Court should instead follow *Alvarez* and the other Fifth Circuit district courts that independently examined § 227(c)(5)'s text and concluded that it encompasses telemarketing texts.

*Bradford* holds that courts must independently interpret the TCPA and may not enforce an agency-created requirement that lacks a statutory basis. 167 F.4th at 812–13. Plaintiff agrees with that methodology. But Plaintiff does not ask the Court to insert the words "text message" into §

227(c)(5). She asks the Court to apply the ordinary meaning of the words Congress enacted. As *Howard* recognized after *Loper Bright*, a "call" ordinarily means an attempt to communicate by telephone, and text messaging falls within that definition. 164 F.4th at 1123–24.

*Bradford* concerned whether the FCC could transform the statutory requirement of "prior express consent" into "prior express written consent." 167 F.4th at 812–13. The FCC added a limitation—"written"—that Congress omitted. Here, by contrast, Defendant asks the Court to add an "audible" or "voice" limitation to "telephone call," even though Congress used neither term in § 227(c)(5). *Bradford* therefore supports applying the enacted language according to its ordinary meaning, not narrowing it through an extra-textual sound requirement.

Defendant attempts to distinguish *Howard* on the ground that it arose under § 227(b), rather than § 227(c)(5). ECF No. 16 at 7–8. But *Howard* did not interpret only § 227(b)(1)(A)(iii)'s phrase "any call." It also considered § 227(b)(1)(B), which uses the materially identical phrase at issue here: "telephone call." 164 F.4th at 1122–28. The Ninth Circuit treated the challenged text message as both a "call" under § 227(b)(1)(A)(iii) and a "telephone call" under § 227(b)(1)(B). *Id.* at 1123–24, 1127–28. Indeed, the court expressly described the text message as "[t]he call at issue." *Id.* at 1127.

The claims in *Howard* failed only because the text message was not initiated using an artificial or prerecorded voice—not because a text was incapable of constituting a "telephone call." *Id.* at 1127–28. *Howard* therefore rejects the central premise of Defendant's argument: that adding the word "telephone" necessarily restricts "call" to an audible voice communication. It also explains why *Soliman* and *Trim* do not help Defendant. Those decisions interpreted "voice" to require sound; they did not impose that requirement on the distinct word "call."

Although *Steidinger* reached a contrary conclusion under § 227(c)(5), its interpretation

cannot be reconciled with *Howard*'s treatment of the same phrase elsewhere in the TCPA. *Steidinger* effectively imported the audible requirement attached to "voice" into the phrase "telephone call," even though § 227(c)(5) contains no reference to a voice, sound, or oral communication. This Court should instead apply the ordinary meaning recognized in *Howard*: an attempt to communicate by telephone, which encompasses a text sent from one telephone number to another.

*Steidinger*'s reliance on the TCPA's facsimile provisions is also unpersuasive. Congress defined a "telephone facsimile machine" as equipment that transcribes text or images "from an electronic signal received over a regular telephone line." 47 U.S.C. § 227(a)(3). That definition confirms that telephone networks transmitted written communications; it does not establish that only audible communications qualify as telephone calls. Nor does the use of "message" in the facsimile provisions define "telephone call" elsewhere in the statute. The relevant question remains whether the sender attempted to communicate by telephone, and Defendant's texts comfortably satisfy that functional definition.

So even post-*Loper Bright*, "the significant weight of case authority" supports interpreting "call" to include text messages. *Better Mortg. Corp*., 2025 WL 3493815, at *9. In sum, the FCC's conclusion that "the term 'call' includes a text message" therefore reflects "the plain meaning of the statutory text as it has been understood by consumers, the FCC, and courts since the TCPA's passage." *Medvidi*, 2025 WL 2856295, at *3. The statute's structure confirms this reading.

**b. That interpretation of the word "call" aligns section 227(c)'s private right of action with its substantive provisions.**

Much of Defendant's argument focuses on the single use of the word "call" in section 227(c)(5). But reading section 227(c)(5)'s private right of action in context with the substantive Do Not Call List provisions of section 227(c) further confirms that text messages are covered.

To see why, start with the core of section 227(c)—its prohibition on "making or transmitting a telephone solicitation to the telephone number of any subscriber" on the Do Not Call List. 47 U.S.C. § 227(c)(3)(F). Text messages, of course, are "ma[de] or transmitt[ed]" to a "telephone number." *Id.* § 227(e)(8)(C). And it is well-established that the residential telephone "subscriber[s]" protected by the Do Not Call List include cell phone subscribers: The FCC determined that cell phone subscribers are covered when it first created the Do Not Call List rules, *see* 18 FCC Rcd. 14014, 14037–39 ¶¶ 33–36 (2003), and courts have overwhelmingly agreed with that interpretation of the statute ever since, *see, e.g.*, *Harriel v. Bealls, Inc.*, 2025 WL 2379617, at *2 (M.D. Fla. 2025); *Cacho v. McCarthy & Kelly LLP*, 739 F. Supp. 3d 195, 203 & n.4 (S.D.N.Y. 2024) (collecting cases).

Defendant's reliance on *Soliman* and *Trim* conflates "call" with "voice." Those decisions held that the statutory word "voice" requires an audible component; neither held that a "call" does. That distinction supports Plaintiff. Congress expressly imposed an audible requirement where it used "voice," but it did not use "voice," "sound," or "audible" in § 227(c)(5). Defendant's proposed interpretation improperly imports into "telephone call" the audible limitation that Congress expressed elsewhere through a different word.

As explained above, "the ordinary, contemporary, and common meaning" of the word "call" in the TCPA includes text messages. *Satterfield*, 569 F.3d at 953–54 & n.3; *see supra*, Part I.A. And contemporary definitions of the word "message" do too—a message in 1991 was "[a]ny notice, word, or communication, *no matter the mode and no matter how sent*." *Message*, *Black's Law Dictionary* (6th ed. 1990), https://perma.cc/MTC3-H47K (emphasis added).[3] So "call" and

[3] *See also, e.g.*, *Message*, *Random House Webster's College Dictionary* (9th ed. 1991) ("a communication delivered *in writing*, speech, by means of signals, etc.") (emphasis added);

"message" both describe communication with a phone, and neither differentiates between oral and written mediums. Finally, the purpose of the DNC provisions further supports that interpretation. Congress's stated goal was "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). "[A] voice message or a text message are not distinguishable in terms of being an invasion of privacy." *Satterfield*, 569 F.3d at 954; *accord Howard*, 164 F.4th at 1124; *Mujahid*, 2025 WL 3140725, at *2; *Medvidi*, 2025 WL 2856295, at *3; *Skopos Fin., LLC*, 2025 WL 2029274, at *4. Indeed, nothing in the statute gives any suggestion that Congress thought "oral messages were more invasive or objectionable than written ones." *Medvidi*, 2025 WL 2856295, at *3.

**c. The other Federal Courts in Texas and elsewhere in the Fifth Circuit that have considered this question got it right.**

Consistent with the statute's text and structure, courts—particularly within the Fifth Circuit—have overwhelmingly held that text messages qualify as calls under the TCPA. Defendant's position would undermine that system if text messages were excluded from § 227(c)'s protections, telemarketers could simply bypass the Registry by shifting from voice calls to texts. Luckily for consumers, federal courts in Texas and this Circuit have gotten the analysis correct. Most importantly, this precise issue has already been decided in Texas federal courts. In *Alvarez v. Fiesta Nissan, Inc.*, Judge Crane independently examined the ordinary meaning of "telephone call" at the time of the TCPA's enactment, the statutory context, and the structure of § 227(c), and concluded that a text message "falls reasonably within the literal language of the statute." 2026 U.S. Dist. LEXIS 14155, at *10–17 (S.D. Tex. Jan. 26, 2026). Judge Crane further

---

*Message*, *Oxford English Dictionary* (2d ed. 1989) ("an oral *or written* communication sent from one person to another") (emphasis added).

concluded that both "the original text and the context support reading § 227(c)'s cause of action to include text messages within its prohibition on violative 'telephone calls.'" *Id.* at *17. Accordingly, the court declined to dismiss the plaintiff's § 227(c)(5) claim. *Id.*

Defendant's criticism of *Alvarez* is misplaced. *Alvarez* did not defer to the FCC or rely on policy considerations. Applying the analysis required by *Loper Bright*, the court independently examined the ordinary public meaning of the statutory language in 1991, contemporaneous dictionaries, and the TCPA's statutory context and structure. *See Alvarez*, 2026 U.S. Dist. LEXIS 14155, at *10–17. *Steidinger*'s subsequent disagreement with that analysis does not make *Alvarez* any less persuasive, much less require this Court to reject the conclusion already reached here in Texas.

Following Judge Crane, another court in the Fifth Circuit adopted the same analysis in *McGonigle v. Shopperschoice.com*, 2026 U.S. Dist. LEXIS 30157, at *13-14 (M.D. La. Feb. 13, 2026). Other courts in the Fifth Circuit have unanimously followed. Indeed, Judge Love explained in the Eastern District of Texas, "As to the matter of whether text messages are covered under §§ 227(b) and (c), numerous federal courts of appeals, including the Fifth Circuit, have held that § 227(b) applies to text messages, or assumed so without deciding the issue. None has construed either provision not to cover text messages…*Cranor v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686, 688 (5th Cir. 2021) ("Robocalls and robotexts are nuisances. Congress banned them in the… TCPA.")…Naturally, this court would follow suit with respect to these provisions of the TCPA having been interpreted to cover text messages.".

Finally, as Judge Torres held recently, "The Court is persuaded by the reasoning of the overwhelming majority of cases confirming cell phones are residential phones for purposes of the act and more importantly, that text messages are actionable under §227(c)(5)." *Callier*, 2026

U.S. Dist. LEXIS 120642, *18; *see also Duron*, 2026 U.S. Dist. LEXIS 6340, at *12. The Fifth Circuit district courts, including multiple federal court judges in Texas, have spoken with one voice: text messages qualify as "calls" under the TCPA and are subject to the same restrictions as voice solicitations. Excluding texts from the Registry would nullify Congress's protections, allow telemarketers to exploit the dominant form of communication today, and erode consumer trust. Because the statutory text, the FCC's consistent interpretation, and precedent all confirm that texts fall within the TCPA's scope, Defendant's attempt to carve out an exception must be rejected.

## CONCLUSION

For these reasons, Plaintiff respectfully requests that the Court deny Defendant Honest Pest Services LLC's Rule 12(c) Motion for Judgment on the Pleadings. The ordinary meaning of "telephone call," the TCPA's text and structure, and the persuasive authorities applying § 227(c)(5) establish that unsolicited telemarketing text messages are actionable. Defendant's contrary interpretation would add an audible-voice limitation that Congress did not enact and would exclude from the private right of action communications expressly regulated under § 227(c).

RESPECTFULLY SUBMITTED AND DATED this 7th day of September, 2026.

*/s/ Anthony Paronich*
Anthony Paronich, Bar No. 3588160
*Attorney in Charge*
**PARONICH LAW, P.C.**
350 Lincoln St., Suite 2400
Hingham, MA 02043
Telephone: (617) 485-0018
anthony@paronichlaw.com

*Attorneys for Plaintiff*