**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **JENNIFER RUSH, individually and on behalf of all others similarly situated,** | § | **CIVIL ACTION NO. 4:26-cv-02580** |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **HONEST PEST SERVICES LLC,** | § | |
| | § | |
| **Defendant.** | | |

**DEFENDANT HONEST PEST SERVICES LLC'S REPLY IN SUPPORT OF ITS RULE 12(c) MOTION FOR JUDGMENT ON THE PLEADINGS**

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................... ii
TABLE OF AUTHORITIES ..................... iii
I. INTRODUCTION ..................... 1
II. ARGUMENT ..................... 2
A. Congress created distinct regulatory and private-enforcement provisions ..................... 2
B. *Steidinger* gives effect to the complete statutory text and structure. ..................... 4
1. 'Telephone call' had a sound-based meaning at enactment. ..................... 4
2. Congress distinguished a 'call' from a 'message' in the original 1991 Act. ..................... 5
3. Congress expressly addressed written transmissions and paging in subsection (b). ..................... 7
C. Howard's subsection (b) analysis does not justify Plaintiff's § 227(c)(5) claim. ..................... 7
1. The presumption of consistent usage yields to demonstrated statutory context. ..................... 7
2. The remaining appellate decisions concern other claims or Article III standing. ..................... 7
D. Later enactments corroborate the original textual distinction. ..................... 10
E. The contrary district decisions do not overcome the original text and statutory context. ..................... 12
1. Mujahid and Rabbitt are displaced on this issue within the Seventh Circuit. ..................... 12
2. Alvarez and McGonigle rest on premises Steidinger rejects. ..................... 13
3. Taha extends subsection (b) without resolving subsection (c)'s distinct text. ..................... 13
4. The Wilson decisions repeat regulatory and cross-provision reasoning. ..................... 14
5. Duron and Callier do not supply a stronger statutory analysis. ..................... 14
F. Independent interpretation, not mandatory FCC deference, governs the private remedy. ..................... 15
G. Judgment should be entered with prejudice because amendment would be futile. ..................... 17
III. CONCLUSION ..................... 17
CERTIFICATE OF SERVICE ..................... 18

## TABLE OF AUTHORITIES

### Cases

*Alexander v. Sandoval*, 532 U.S. 275 (2001) ........ 3, 12

*Alvarez v. Fiesta Nissan, Inc.*, No. 7:25-cv-00343, 2026 U.S. Dist. LEXIS 14155 (S.D. Tex. Jan. 26, 2026) ........ 5–6, 13

*Bradford v. Sovereign Pest Control of Tex., Inc.*, 167 F.4th 809 (5th Cir. 2026) ........ 17

*Cacho v. McCarthy & Kelly LLP*, 739 F. Supp. 3d 195 (S.D.N.Y. 2024) ........ 4

*Callier v. Am. Auto Grp. LLC*, No. 3:25-cv-00231-LS-MAT, 2026 U.S. Dist. LEXIS 120642 (W.D. Tex. May 29, 2026), report and recommendation adopted, 2026 U.S. Dist. LEXIS 133573 (W.D. Tex. June 16, 2026) ........ 15

*Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016) ........ 10, 14

*Camreta v. Greene*, 563 U.S. 692 (2011) ........ 14

*Cranor v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686 (5th Cir. 2021) ........ 9

*Duron v. Kings Cap. Holding LLC*, No. 3:25-cv-00149-DCG, 2026 U.S. Dist. LEXIS 6340 (W.D. Tex. Jan. 13, 2026), report and recommendation adopted, 2026 U.S. Dist. LEXIS 23949 (W.D. Tex. Feb. 5, 2026) ........ 15

*Facebook, Inc. v. Duguid*, 592 U.S. 395 (2021) ........ 5, 10

*Hall v. Smosh Dot Com, Inc.*, 72 F.4th 983 (9th Cir. 2023) ........ 10

*Harriel v. Bealls, Inc.*, No. 8:25-cv-01165-TPB-SPF, 2025 U.S. Dist. LEXIS 158157 (M.D. Fla. Aug. 15, 2025) ........ 4

*Howard v. Republican Nat'l Comm.*, 164 F.4th 1119 (9th Cir. 2026) ........ 1, 8–9, 14

*Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024) ........ 8, 12, 15–17

*McGonigle v. Shopperschoice.com, L.L.C.*, No. 25-152-SDD-RLB, 2026 U.S. Dist. LEXIS 30157 (M.D. La. Feb. 13, 2026) ........ 6, 13

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146 (2025) ........ 15–17

*Middlesex County Sewerage Authority v. National Sea Clammers Ass'n*, 453 U.S. 1, (1981) ….. 3

*Mujahid v. Newity, LLC*, No. 25 C 8012, 2025 U.S. Dist. LEXIS 221088 (N.D. Ill. Nov. 10, 2025) ........ 13

*Nielsen v. Preap*, 586 U.S. 392 (2019) ........ 6

*Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206 (1998) ........ 5

*Q Clothier New Orleans, L.L.C. v. Twin City Fire Ins. Co.*, 29 F.4th 252 (5th Cir. 2022) ............. 2

*Rabbitt v. Rohrman Midwest Motors, Inc.*, No. 25 C 11312, 2026 U.S. Dist. LEXIS 66266 (N.D. Ill. Mar. 27, 2026) ........................................................................................ 4, 12–13

*RJR Nabisco, Inc. v. European Community*, 579 U.S. 325, 346 (2016) ………………………… 3

*Rush v. SelectQuote Ins. Servs., Inc.*, No. 6:26-cv-03157-MBB, 2026 U.S. Dist. LEXIS 182934 (W.D. Mo. July 30, 2026) ............................................................................... 1, 16

*Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009) ...................................... 10, 14

*Soliman v. Subway Franchisee Advert. Fund Tr., Ltd.*, 101 F.4th 176 (2d Cir. 2024) .................. 10

*Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 580 U.S. 405 (2017) ............................................. 12

*Steidinger v. Blackstone Med. Servs., LLC*, 182 F.4th 532 (7th Cir. 2026) ........................... *passim*

*Stoneridge Inv. Partners, LLC v. Sci.-Atlanta, Inc.*, 552 U.S. 148, 128 S. Ct. 761 (2008) ………. 3

*Stripling v. Jordan Prod. Co.*, 234 F.3d 863 (5th Cir. 2000) ......................................................... 18

*Sw. Airlines Co. v. Saxon*, 596 U.S. 450 (2022)............................................................................. 6

*Taha v. Momentive Software, Inc.*, No. 8:25-cv-02330-DOC-JDE, 2026 U.S. Dist. LEXIS 54376 (C.D. Cal. Mar. 11, 2026) ......................................................................................... 14

*Trim v. Reward Zone USA LLC*, 76 F.4th 1157 (9th Cir. 2023) .................................................. 10

*Util. Air Regul. Grp. v. EPA*, 573 U.S. 302 (2014) ......................................................................... 8

*Warciak v. Subway Rests., Inc.*, 949 F.3d 354 (7th Cir. 2020)................................................. 9–10

*Wilson v. Better Mortg. Corp.*, 811 F. Supp. 3d 631 (S.D.N.Y. 2025) .......................................... 14

*Wilson v. MEDvidi Inc.*, No. 5:25-cv-03996-BLF, 2025 U.S. Dist. LEXIS 198827 (N.D. Cal. Oct. 7, 2025) ................................................................................................................ 14

*Wilson v. Skopos Fin., LLC*, No. 6:25-cv-00376-MC, 2025 U.S. Dist. LEXIS 138638 (D. Or. July 21, 2025)................................................................................................................. 15

*Wis. Cent. Ltd. v. United States*, 585 U.S. 274 (2018) .................................................................... 4

**Rules**

Fed. R. Civ. P. 12(b)(6) ...........................................................................................................2, 10, 18

Fed. R. Civ. P. 12(c) ...........................................................................................................................2, 18

**Statues**

47 U.S.C. § 227 ...........................................................................................................................*passim*

Consolidated Appropriations Act, 2018, Pub. L. No. 115-141, div. P, tit. V, § 503, 132 Stat. 348 ............ 11

Junk Fax Prevention Act of 2005, Pub. L. No. 109-21, § 2(b)(1), 119 Stat. 359 ............ 6

Pallone-Thune Telephone Robocall Abuse Criminal Enforcement and Deterrence Act, Pub. L. No. 116-105, §§ 3(a)(1), 10(a), 133 Stat. 3274 (2019) ............ 11–12

Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 3(a), 105 Stat. 2394 ............ 6–7

**Regulations and Administrative Materials**

47 C.F.R. § 64.1200(c), (e) ............ 2, 17

In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 18 FCC Rcd. 14014 (2003) ............ 16

## I. INTRODUCTION

Four written pest-control solicitations are the basis for Rush's proposed nationwide class action against Honest Pest. The Complaint alleges no telephone call. ECF No. 1 at 5–7, 10–11. The decisive question is therefore not whether texts may violate the TCPA, but whether the particular private remedy Congress enacted in 47 U.S.C. § 227(c)(5) reaches them. Congress authorized regulation of "telephone solicitations," defined to include a "telephone call or message," but conditioned this private remedy on receipt of multiple "telephone calls." That choice must be given effect.

The Seventh Circuit adopted that provision-specific reading in *Steidinger v. Blackstone Med. Servs., LLC*, 182 F.4th 532, 535–40 (7th Cir. 2026). It examined the original meaning of the complete phrase, the call-or-message distinction within subsection (c), the broader private remedy in subsection (b), and Congress's later express treatment of texts. The Western District of Missouri then applied that reasoning to this same Plaintiff's materially identical text-only theory and dismissed it. *Rush v. SelectQuote Ins. Servs., Inc.*, No. 6:26-cv-03157-MBB, 2026 U.S. Dist. LEXIS 182934, at *4–16 (W.D. Mo. July 30, 2026). Honest Pest asks this Court to adopt the same statutory analysis.

This Reply addresses Plaintiff's Opposition (ECF No. 17) to Honest Pest's Rule 12(c) Motion (ECF No. 16) in this text-only putative class action. The pleadings are closed; the remaining question is whether the alleged texts satisfy § 227(c)(5). The Court applies the Rule 12(b)(6) standard, accepts well-pleaded facts rather than legal conclusions, and may enter judgment where those facts establish no cognizable claim. *Q Clothier New Orleans, L.L.C. v. Twin City Fire Ins. Co.*, 29 F.4th 252, 256 (5th Cir. 2022).

## II. ARGUMENT

### A. Congress created distinct regulatory and private-enforcement provisions.

Plaintiff begins by asserting that Honest Pest would "remove text messages from the protections of the National Do-Not-Call Registry." ECF No. 17 at 1. That is not the relief requested. The Motion does not challenge the FCC's authority under § 227(c)(1)-(4) to regulate "telephone solicitations," a defined category that includes a "telephone call or message." 47 U.S.C. § 227(a)(4), (c)(1)-(4). Nor does it ask this Court to set aside 47 C.F.R. § 64.1200(e). The Motion concerns a separate question: whether Congress made every regulated solicitation privately actionable for statutory damages under § 227(c)(5).

The answer follows from the provision's grammar. Section 227(c)(5) identifies a "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection." The person must satisfy both conditions: receipt of more than one telephone call, and a violation of the applicable regulations. The final regulatory phrase modifies the calls that are actionable; it does not replace the antecedent noun "telephone call" with "telephone solicitation," much less with "call or message." *Steidinger*, 182 F.4th at 538–39. That grammar does not by itself establish whether a text is a telephone call. It does establish that a regulatory violation alone is insufficient: the communication must also fit Congress's statutory category, construed using its ordinary meaning and surrounding text.

Within the TPCA, Congress demonstrated how to create the broader remedy Plaintiff proposes. Section 227(b)(3) authorizes an action "based on a violation of this subsection or the regulations prescribed under this subsection." 47 U.S.C. § 227(b)(3)(A). Section 227(c)(5) instead first confines the plaintiff class to persons receiving more than one telephone call. The different formulations matter. Congress creates private remedies, and courts may not extend them beyond the class and conduct Congress specified merely because broader enforcement would further the

statute's purpose. *Middlesex County Sewerage Authority v. National Sea Clammers Ass'n*, 453 U.S. 1, 13–18 (1981); *Alexander v. Sandoval*, 532 U.S. 275, 286–87 (2001); *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta, Inc.*, 552 U.S. 148, 128 S. Ct. 761 (2008); *RJR Nabisco, Inc. v. European Community,* 579 U.S. 325, 346, 349–50 (2016)("the civil remedy is not coextensive with § 1962's substantive prohibitions.").

Separate analysis does not mean mutually exclusive coverage. Subsection (b) addresses specified communication methods, equipment, and destinations, including autodialed communications, prerecorded voices, and fax transmissions. Subsection (c) authorizes protection against unwanted solicitations without making use of an autodialer or prerecorded voice an element. Repeated manually dialed, live-voice sales calls can therefore implicate the DNC rules without violating subsection (b)'s equipment-based restrictions. Section 227(c)(6) expressly provides that subsection (c) does not permit a communication prohibited by subsection (b). Congress contemplated the provisions operating together. Their distinct functions remain even where coverage overlaps.

The consequence is not that "telephone call" must mean different things wherever it appears. It is that each private claim must satisfy the language Congress chose for it. Subsection (b)'s breadth cannot substitute for analysis of § 227(c)(5), any more than § 227(c)(5)'s numerical threshold could be imported into § 227(b)(3). Here, the ordinary meaning and same-subsection contrasts discussed below establish the communication boundary; the different private remedies confirm, rather than assume, that conclusion.

This reading does not render the DNC rules incoherent. Congress can authorize an agency to regulate more conduct than a private litigant may monetize through statutory damages. The FCC's substantive regulation and governmental enforcement remain intact, as do any remedies Congress separately created under other TCPA provisions. *Steidinger*, 182 F.4th at 540. What remains unavailable is only the remedy Congress conditioned on multiple "telephone calls." That distinction

answers Plaintiff's reliance on § 227(c)(3)(F), the FCC's regulation, and *Rabbitt v. Rohrman Midwest Motors, Inc.*, No. 25 C 11312, 2026 U.S. Dist. LEXIS 66266, at *4–8 (N.D. Ill. Mar. 27, 2026).

The cases Plaintiff cites concerning whether a wireless number used at home may qualify as a residential subscriber number address another issue. See *Cacho v. McCarthy & Kelly LLP*, 739 F. Supp. 3d 195, 203–06 (S.D.N.Y. 2024); *Harriel v. Bealls, Inc.*, No. 8:25-cv-01165-TPB-SPF, 2025 U.S. Dist. LEXIS 158157, at *3–5 (M.D. Fla. Aug. 15, 2025). Honest Pest does not seek judgment on the ground that Rush's cellular number is categorically nonresidential. Those decisions therefore do not answer whether a text is the “telephone call” required by § 227(c)(5).

**B. *Steidinger* gives effect to the complete statutory text and structure.**

**1. 'Telephone call' had a sound-based meaning at enactment.**

Plaintiff isolates the word "call" and quotes definitions such as "to communicate or try to communicate with by telephone." ECF No. 17 at 5. But § 227(c)(5) does not say "communication" or even the bare noun "call"; it says "telephone call." Statutory words are read in context, and their ordinary public meaning is fixed at enactment. *Wis. Cent. Ltd. v. United States*, 585 U.S. 274, 284 (2018). In 1991, a telephone was an instrument for reproducing sounds at a distance, and a call was an attempt to communicate by that instrument. Read together, the phrase denoted sound-based communication. *Steidinger*, 182 F.4th at 535–36.

That analysis does not insert the word "audible." It identifies the defining function embedded in the enacted compound phrase. Nor does it freeze the statute to rotary landlines. A modern smartphone voice call is a new application because it performs the defining sound-transmission function. A written text is a different function. Fixed meaning permits new applications; it does not erase category boundaries. *Steidinger*, 182 F.4th at 536; *Facebook, Inc. v. Duguid*, 592 U.S. 395, 408–09 (2021) (a court may not update the TCPA to match changed technology or a broad remedial purpose).

Plaintiff's unforeseen-application cases do not establish otherwise. A statute may reach applications Congress did not specifically anticipate, but only when the new application falls within the meaning of the words Congress chose. ECF No. 17 at 8; see *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 212 (1998). *Steidinger* accepted that principle and asked the necessary next question: whether texts perform the defining function of a 1991 telephone call. 182 F.4th at 536. It held they do not.

*Alvarez v. Fiesta Nissan, Inc.*, No. 7:25-cv-00343, 2026 U.S. Dist. LEXIS 14155, at *12–14 (S.D. Tex. Jan. 26, 2026), analogized a smartphone to a modern haybine that remains a mower because it still cuts hay. That analogy does not resolve which use of the multifunction device is covered. A smartphone remains a telephone, and its voice calls remain telephone calls, notwithstanding its added functions. But its ability to transmit writing does not make each written transmission a sound-based telephone call. The relevant statutory object is the communication, not every activity a device capable of making calls can perform. The sound-transmission meaning thus accommodates modern telephones without treating every use of them as a call.

**2. Congress distinguished a 'call' from a 'message' in the original 1991 Act.**

The surrounding text supplies the strongest confirmation. Sections 227(c)(1)-(4) concern "telephone solicitations." From the TCPA's enactment, Congress defined that term as "the initiation of a telephone call or message" for specified commercial purposes. 47 U.S.C. § 227(a)(4). In § 227(c)(5), Congress did not authorize suit after multiple "telephone solicitations." It selected "telephone call." The meaningful-variation and surplusage principles support giving independent effect to that narrower choice, particularly because the different formulations occur within the same subsection. *Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 457–58 (2022); *Nielsen v. Preap*, 586 U.S. 392, 414 (2019); *Steidinger*, 182 F.4th at 536–37.

Plaintiff responds that Congress could not deliberately distinguish calls from texts before SMS technology existed. ECF No. 17 at 8–10. But the statute distinguishes calls from messages, not

voice calls from a technology Congress named "SMS." Congress made that distinction in the original Act. The 1991 public law defined "telephone solicitation" as a "telephone call or message" at 105 Stat. 2395, while enacting § 227(c)(5)'s "telephone call" limitation at 105 Stat. 2399. Pub. L. No. 102-243, § 3(a), 105 Stat. 2394, 2395, 2399 (1991). No speculation about later technology or legislative intent is necessary; the enacted words themselves draw the line.

The definition appeared in original subsection (a)(3). The 2005 legislation redesignated that paragraph as (a)(4); it did not add the words "call or message." Junk Fax Prevention Act of 2005, Pub. L. No. 109-21, § 2(b)(1), 119 Stat. 359, 360. Thus, the chronology on which *Alvarez* relied is not a permissible inference about congressional intent; it is contradicted by the Statutes at large.

This original enactment is important because *Alvarez* stated that Congress "added that definition later, after text messaging had become commonplace," and inferred that the later definition *could* have broadened § 227(c)(5). 2026 U.S. Dist. LEXIS 14155, at *16. *McGonigle v. Shopperschoice.com, L.L.C.*, No. 25-152-SDD-RLB, 2026 U.S. Dist. LEXIS 30157, at *12–13 (M.D. La. Feb. 13, 2026). Because the definition and private remedy were enacted simultaneously in 1991, the definition cannot be treated as a later expansion that silently altered § 227(c)(5). This corrects a material premise; it does not dispose of those decisions' independent ordinary-meaning analysis, which must be assessed on the grounds discussed above.

Plaintiff correctly observes that a telephone call can "deliver a message." ECF No. 17 at 8–9; 47 U.S.C. § 227(b)(1)(B). Honest Pest need not contend that the words never overlap in ordinary usage. A spoken message may be the content of a call without making every independently transmitted written message a call. The disjunctive formulation in § 227(a)(4) reaches forms of solicitation beyond calls. Most importantly, § 227(c)(5) does <u>*not*</u> adopt that whole category. Read with the complete phrase's original meaning and the fax provisions, the contrast supports classifying written texts as messages rather than expanding the private trigger to every communication received on a telephone.

**3. Congress expressly addressed written transmissions and paging in subsection (b).**

Congress also understood in 1991 that written electronic communications could travel over telephone lines. The original Act expressly identified paging and cellular services in § 227(b)(1)(A)(iii), separately regulated fax advertisements in § 227(b)(1)(C), and supplied the violation-based remedy in § 227(b)(3). Pub. L. No. 102-243, § 3(a), 105 Stat. at 2395–96. It defined facsimile equipment by its transmission of text or images over a regular telephone line and described an electronic device's fax transmission as sending a message. 47 U.S.C. § 227(a)(3), (d)(1)(B). These are contextual examples, not a comprehensive definition of "telephone call." *Steidinger*, 182 F.4th at 537. They show that Congress legislated about written electronic communications and used message terminology for them before SMS existed.

Plaintiff's pager example therefore establishes an important but limited point: subsection (b)'s expressly enumerated coverage was not confined to ordinary two-way voice conversations. ECF No. 17 at 6, 12. Honest Pest accepts that point for this Motion. It supports reading subsection (b) according to its communication-specific prohibitions and broad private remedy. It does not resolve whether subsection (c)'s distinct private trigger includes a written text. That question requires giving effect to subsection (c)'s own call-or-message contrast. *Steidinger*, 182 F.4th at 539.

**C. *Howard*'s subsection (b) analysis does not justify Plaintiff's § 227(c)(5) claim.**

**1. The presumption of consistent usage yields to demonstrated statutory context.**

Plaintiff's reliance on Howard overlooks a fundamental difference between the private rights of action Congress enacted in subsections (b) and (c). Section 227(b)(3), under which Howard arose, authorizes private actions for violations of subsection (b) or its implementing regulations. That remedy encompasses subsection (b)'s distinct prohibitions, including specified calls to paging and cellular services, prerecorded-voice calls, and unsolicited facsimile advertisements. 47 U.S.C. § 227(b)(1), (3). Congress wrote § 227(c)(5) differently: it expressly conditions private enforcement on the plaintiff's receipt of more than one "telephone call" within twelve months by or on behalf of

the same entity in violation of the applicable regulations. A decision interpreting subsection (b)'s prohibitions therefore does not resolve the scope of subsection (c)'s separately worded private remedy.

The surrounding language explains why that difference matters here. Congress used "telephone solicitations" to describe the communications subject to regulation under subsection (c), and defined that category to encompass a "telephone call or message." *Id.* § 227(a)(4), (c)(1)–(4). Yet Congress selected only "telephone call" when identifying the communications that trigger the private right of action in § 227(c)(5). Reading that phrase to encompass every written message transmitted between telephones would erase the distinction Congress drew between calls and messages. Steidinger gives effect to that distinction: the ordinary meaning of "telephone call" at enactment involved communication through sound, while a written text falls within the separately identified category of messages. *Steidinger v. Blackstone Med. Servs.*, 182 F.4th 532, 535–37 (7th Cir. 2026).

Howard did not undertake that analysis. It construed both "any call" in § 227(b)(1)(A)(iii) and "telephone call" in § 227(b)(1)(B), reasoning that texts communicate between telephones and produce privacy intrusions comparable to incoming calls. *Howard v. Republican Nat'l Comm.*, 164 F.4th 1119, 1123–25 (9th Cir. 2026). But neither observation explains Congress's narrower choice of language for private enforcement within subsection (c). Although identical statutory terms presumptively carry the same meaning, that presumption "readily yields" to statutory context. *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 320 (2014). Here, the relevant context includes both the different private remedies and the express call-or-message distinction surrounding § 227(c)(5).

*Steidinger* addressed these precise features, expressly considered Howard, and rejected the argument that subsection (b)'s coverage of texts establishes a corresponding right to sue under § 227(c)(5). 182 F.4th at 538–39. This Court should adopt that analysis. It gives effect to Congress's

language governing this particular cause of action; Howard's broader reasoning about telephone communications and privacy does not account for those limits.

**2. The remaining appellate decisions concern other claims or Article III standing.**

The Fifth Circuit has not decided whether texts alone satisfy § 227(c)(5). Plaintiff's reliance on *Cranor v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686, 688–90 (5th Cir. 2021), does not close that question. ECF No. 17 at 16. *Cranor* involved an allegedly autodialed text and subsection (b)'s private remedy. It reversed a jurisdictional dismissal because the nuisance of an unsolicited text supplied a concrete injury for Article III standing. 998 F.3d at 690. Whether an injury supports standing and whether the communication satisfies § 227(c)(5)'s statutory conditions are different questions.

The same is true of *Warciak v. Subway Rests., Inc.*, 949 F.3d 354 (7th Cir. 2020). *Warciak* stated in the § 227(b)(1)(A)(iii) context that texts qualify as calls, then resolved agency and wireless-carrier issues. *Warciak*, 949 F.3d at 356–59. The same circuit later held that its own § 227(b) language did not govern § 227(c)(5). *Steidinger*, 182 F.4th at 537–38. If *Warciak* did not bind the Seventh Circuit on the distinct cause of action, comparable § 227(b) cases from other circuits do not decide this Court's question.

The earlier appellate text cases likewise do not supply a holding on § 227(c)(5). *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952–54 (9th Cir. 2009), addressed an automated text under § 227(b)(1)(A)(iii). That decision supports Plaintiff's premise that a text can be a call under subsection (b); it does not examine the internal call-or-message contrast governing the different private remedy.

Plaintiff is also correct that *Soliman v. Subway Franchisee Advert. Fund Tr., Ltd.*, 101 F.4th 176, 188–89 (2d Cir. 2024), interpreted "artificial or prerecorded voice" in § 227(b)(1)(A)(iii), while *Trim v. Reward Zone USA LLC*, 76 F.4th 1157, 1159, 1161–63 (9th Cir. 2023), interpreted that phrase in § 227(b)(1)(A)(iii), not § 227(c)(5). ECF No. 17 at 14. They were cited as textual

analogies, not as holdings on this cause of action. The dispositive support is *Steidinger*, which actually construed § 227(c)(5). That distinction avoids the same cross-provision overreading on which Plaintiff's § 227(b) cases depend.

Plaintiff's Supreme Court authorities are still further removed. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016), recorded that it was "undisputed" a text qualified as a call within § 227(b)(1)(A)(iii); the actual issues were mootness and derivative sovereign immunity. The Supreme Court later confirmed it had assumed the text point "without considering or resolving" it. *Duguid*, 592 U.S. at 400 n.2. And *Hall v. Smosh Dot Com, Inc.*, 72 F.4th 983, 987–91 & n.7 (9th Cir. 2023), decided only Article III standing and expressly left the Rule 12(b)(6) merits for remand. None is a holding that § 227(c)(5) authorizes text-only suits.

By contrast, the statutory issue was squarely presented in *Steidinger*. Although the consolidated complaint mentioned calls as well as texts, the plaintiffs did not argue that calls alone sustained their claims; the court deemed that theory waived and decided the text issue. 182 F.4th at 534–35 & n.1. Thus, the case was not factually text-only in every respect, but its holding directly resolved whether texts satisfy § 227(c)(5). Rush's Complaint presents that same legal issue without any allegation that she received a telephone call.

**D. Later enactments corroborate the original textual distinction.**

The 2018 and 2019 enactments should be read precisely. In 2018, Congress expressly added text messaging to subsection (e)'s anti-spoofing provisions and supplied definitions limited to that subsection. Consolidated Appropriations Act, 2018, Pub. L. No. 115-141, div. P, tit. V, § 503(a)(1)–(2), 132 Stat. 348, 1091–92; 47 U.S.C. § 227(e)(8). That was not an amendment adding texts to subsection (b), and the new definition was not made universally applicable throughout § 227. It demonstrates Congress's ability to specify text coverage in a particular statutory setting.

The 2018 Act also expressly preserved existing FCC rules and orders. Pub. L. No. 115-141, div. P, tit. V, § 503(d), 132 Stat. at 1094. Honest Pest does not argue that Congress thereby

repudiated the FCC's treatment of texts or narrowed existing regulations. Preserving regulatory protection is consistent with this Motion, which asks the Court to interpret the separate statutory conditions for a private action without setting aside the DNC rules. The savings provision does not replace the communication threshold in § 227(c)(5).

In 2019, Congress added § 227(i)(1)(A), referring expressly to "a call made or a text message sent in violation of subsection (b)." Pallone-Thune Telephone Robocall Abuse Criminal Enforcement and Deterrence Act, Pub. L. No. 116-105, § 10(a), 133 Stat. 3274, 3284. Honest Pest accepts the affirmative implication: texts can violate subsection (b), subject to that subsection's requirements. But Congress's recognition of text violations under (b) does not answer whether texts satisfy (c)(5). Congress expressly incorporated subsection (e)'s text definition into (i), yet did not replace (c)(5)'s private-action language. 47 U.S.C. § 227(i)(2). The same Act added governmental forfeiture provisions in (b)(4), not a new text-based formulation of (b)(3)'s private remedy. Pub. L. No. 116-105, § 3(a)(1), 133 Stat. at 3274–75. That remedy's broader wording was already present in 1991.

Congress originally regulated multiple communication technologies through specifically worded provisions; it supplied differently framed private remedies; and it later expressly recognized texts in connection with (b) and (e) without rewriting (c)(5). Those affirmative choices support reading each remedy in its own context. They do not establish that Congress deliberately considered and rejected modern text-only DNC suits.

Plaintiff and *Rabbitt* draw the opposite inference from the unchanged language, arguing that Congress accepted the existing FCC and district-court interpretation. ECF No. 17 at 10–11. *Steidinger* explains that silence cuts both ways. 182 F.4th at 539. The Supreme Court likewise cautions against treating isolated amendments and legislative silence as affirmative approval. *Sandoval*, 532 U.S. at 292; *Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 580 U.S. 405, 424 (2017). Neither side can use silence to displace the enacted text. And *Loper Bright* preserved prior holdings

that specific agency actions were lawful; it did not convert a § 227(b) holding or an FCC rule into statutory stare decisis for a different cause of action. 603 U.S. at 412.

The primary basis for judgment therefore remains the original text: Congress used "telephone call or message" for the regulated solicitation and "telephone call" for the private trigger in the same enactment. The later provisions corroborate the need for that provision-specific inquiry; they do not substitute for it.

**E. The contrary district decisions do not overcome the original text and statutory context.**

Plaintiff's district-court authorities must be assessed against the subsequent appellate construction of the very provision at issue. Their number does not answer their common analytical defect: carrying subsection (b)'s text-message treatment or the FCC's regulatory coverage into § 227(c)(5) without giving adequate effect to that provision's distinct language. *Steidinger* exposes that defect. Its precedential effect is strongest within the Seventh Circuit; elsewhere, its provision-specific reasoning supplies the persuasive answer to the contrary district decisions.

**1. *Mujahid* and *Rabbitt* are displaced on this issue within the Seventh Circuit.**

*Mujahid v. Newity, LLC*, No. 25 C 8012, 2025 U.S. Dist. LEXIS 221088, at *3–7 (N.D. Ill. Nov. 10, 2025), and *Rabbitt*, 2026 U.S. Dist. LEXIS 66266, at *4–10, are Northern District of Illinois decisions holding that texts satisfy § 227(c)(5). *Mujahid* relied on ordinary meaning, subsection (b) precedent, statutory purpose, and FCC guidance; *Rabbitt* emphasized regulatory coherence, statutory stare decisis, and congressional inaction. Both preceded *Steidinger*, which considered and rejected those bases for extending this private remedy to texts. 182 F.4th at 535–40.

Their contrary § 227(c)(5) conclusions cannot now be followed by district courts within the Seventh Circuit, where *Steidinger* supplies the binding interpretation of that provision. The statutory rule Plaintiff invokes from those decisions has thus been superseded within their own circuit. Although *Steidinger* is persuasive rather than binding here, those earlier district-court conclusions

carry diminished persuasive force after their own court of appeals has directly rejected the statutory interpretation on which they depend.

**2. *Alvarez* and *McGonigle* rest on premises Steidinger rejects.**

*Alvarez* and *McGonigle* are the most directly adverse decisions within the Fifth Circuit. Both undertook to apply independent statutory interpretation; their conclusions cannot be dismissed merely because the law of agency deference changed. *McGonigle* adopted *Alvarez*'s analysis. 2026 U.S. Dist. LEXIS 30157, at *8–14. The reasons to decline their result are substantive: the historical premise about a later-added definition is incorrect; the multifunction-device analogy does not classify each use of the device; regulatory coverage does not by itself satisfy the private trigger; and consistent usage is a presumption tested against the immediate statutory context. *Steidinger* supplies the answer: the original sound-based meaning is confirmed by Congress's contemporaneous call-or-message contrast and its selection of a different private-action trigger. 182 F.4th at 535–39. The later appellate analysis is persuasive because it gives effect to statutory distinctions those district decisions inadequately addressed, not merely because it is newer. Neither district decision binds this Court. *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011).

**3. *Taha* extends subsection (b) without resolving subsection (c)'s distinct text.**

*Taha v. Momentive Software, Inc.*, No. 8:25-cv-02330-DOC-JDE, 2026 U.S. Dist. LEXIS 54376, at *4–8 & n.1 (C.D. Cal. Mar. 11, 2026), extrapolated from *Howard* and *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009), while acknowledging that both appellate cases arose under § 227(b) and that their broader language could technically be dicta as applied to § 227(c)(5). *Taha* did not address the full force of the same-subsection "call or message" contrast later adopted by *Steidinger*. Its extension of the subsection (b) cases is inadequate for the reasons discussed in Section C: comparable privacy interests and overlapping terminology do not erase the communication-specific condition Congress imposed on this private action.

**4. The *Wilson* decisions repeat regulatory and cross-provision reasoning.**

*Wilson v. Better Mortg. Corp.*, 811 F. Supp. 3d 631, 637–39 (S.D.N.Y. 2025), treated § 227(b) precedent and the FCC's text rules as establishing that texts are calls throughout the TCPA. *Wilson v. MEDvidi Inc.*, No. 5:25-cv-03996-BLF, 2025 U.S. Dist. LEXIS 198827, at *6–10 (N.D. Cal. Oct. 7, 2025), likewise relied on *Campbell-Ewald*, *Satterfield*, and FCC materials. Those sources establish text coverage in particular statutory and regulatory settings; they do not dispense with analysis of § 227(c)(5)'s independent communication threshold. *Steidinger*, 182 F.4th at 537–39.

*Wilson v. Skopos Fin., LLC*, No. 6:25-cv-00376-MC, 2025 U.S. Dist. LEXIS 138638, at *10–13 (D. Or. July 21, 2025), reasoned that the FCC had "expanded" the TCPA to texts and relied on that expansion and privacy purpose without applying *Loper Bright* or *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 152, 155 (2025). That reasoning reverses the required inquiry: the Court must first determine the best reading of Congress's private-remedy text, then assess the agency's reasoning for its persuasive value. *Steidinger* correctly distinguishes the FCC's power to regulate solicitations from Congress's conditions for a private damages action. 182 F.4th at 538–40. It undermines these decisions' reasoning without operating as binding precedent outside its circuit.

**5. *Duron* and *Callier* do not supply a stronger statutory analysis.**

The Texas decisions in *Duron v. Kings Cap. Holding LLC*, No. 3:25-cv-00149-DCG, 2026 U.S. Dist. LEXIS 6340, at *1–2, *11–13 (W.D. Tex. Jan. 13, 2026), report and recommendation adopted, 2026 U.S. Dist. LEXIS 23949 (W.D. Tex. Feb. 5, 2026), and *Callier v. Am. Auto Grp. LLC*, No. 3:25-cv-00231-LS-MAT, 2026 U.S. Dist. LEXIS 120642, at *1–2, *16–18 (W.D. Tex. May 29, 2026), report and recommendation adopted, 2026 U.S. Dist. LEXIS 133573 (W.D. Tex. June 16, 2026), arose on unopposed requests for default judgment. *Duron* also alleged a voice call in addition to texts. Both decisions expressly considered the contrary district-court ruling later

affirmed in *Steidinger* and the intervening deference decisions, but relied on FCC guidance, other district decisions, and standing authorities. Those regulatory and cross-provision premises are answered above; default posture alone is not the answer. Neither court received adversarial briefing on the statutory question, and neither had *Steidinger*. More fundamentally, standing establishes an injury rather than satisfaction of § 227(c)(5), and FCC coverage establishes a regulatory obligation rather than the scope of Congress's private remedy. *Steidinger* addresses that distinction directly. 182 F.4th at 537–40. Neither default decision explains why those general premises should overcome the original text and statutory contrasts identified by the appellate court.

Plaintiff's cases therefore show a genuine district-court disagreement, not controlling circuit law. *Steidinger* is later, appellate, and provision-specific; it directly answers the arguments those cases accepted. The Western District of Missouri then applied it to this same Plaintiff's materially identical text-only theory and dismissed. *Rush v. SelectQuote Ins. Servs., Inc.*, No. 6:26-cv-03157-MBB, 2026 U.S. Dist. LEXIS 182934, at *4–16 (W.D. Mo. July 30, 2026). Rush's identity does not determine statutory meaning, but the decision confirms that her pleaded theory presents the same legal defect.

**F. Independent interpretation, not mandatory FCC deference, governs the private remedy.**

Plaintiff correctly acknowledges that the Court owes the FCC no controlling deference. ECF No. 17 at 4. After *Loper Bright*, 603 U.S. at 400–03, and the TCPA-specific decision in *McLaughlin*, 606 U.S. at 152, 155, a district court independently determines statutory meaning using traditional interpretive tools. Agency reasoning may receive respect proportional to its persuasive force. The end of mandatory deference does not itself establish Honest Pest's interpretation; it requires the Court to choose the best reading through the textual analysis set out above.

The cited FCC materials do not independently analyze § 227(c)(5)'s private-remedy phrase. Paragraph 165 of the 2003 Order concluded that § 227(b)(1)(A)'s restriction on "any call" to wireless numbers "encompasses both voice calls and text calls." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003). It did not construe § 227(c)(5), analyze "telephone call or message," or distinguish the two private remedies. The order also followed enactment by twelve years and responded to a technology that had arisen in the interim. It is not a contemporaneous administrative construction of the 1991 private right.

The later amendment to 47 C.F.R. § 64.1200(e) expressly applies the DNC rules to text solicitations sent to wireless numbers. That is an exercise of authority over the broader regulated subject of telephone solicitations. It does not separately construe § 227(c)(5)'s communication-specific trigger or eliminate that statutory condition. The agency's judgment about the need to regulate texts may be persuasive about the regulatory subject without determining the scope of Congress's private remedy. *Steidinger*, 182 F.4th at 538–39.

The Fifth Circuit's intervening decision in *Bradford v. Sovereign Pest Control of Tex., Inc.*, 167 F.4th 809 (5th Cir. 2026), supplies the governing methodology, not a holding on this precise question. Applying *McLaughlin* and *Loper Bright*, the court held that TCPA enforcement courts must interpret Congress's text without deference and refused to enforce the FCC's "written" consent requirement because "[t]he statute provides no basis" for the added term. *Bradford*, 167 F.4th at 812–13. Here too, agency authority to regulate solicitations does not resolve the separate question of which communications satisfy Congress's private-action condition.

Plaintiff responds that Honest Pest adds an "audible" limitation. ECF No. 17 at 11–13. That objection is resolved by interpreting the complete phrase, not by labeling either party's reading an insertion. Honest Pest derives the sound-transmission meaning from the 1991 phrase and tests it

against Congress's own call-or-message contrast. For the reasons already explained, that reading gives the private trigger independent effect while preserving regulatory coverage. *Bradford* requires that independent inquiry; it does not prejudge the answer to the text-message question.

**G. Judgment should be entered with prejudice because amendment would be futile.**

The Complaint identifies and reproduces four written texts, and it alleges no telephone call to Rush. ECF No. 1 at 5–7, 10–11. The Opposition identifies no proposed amendment that would cure the resulting defect under § 227(c)(5). If the Court adopts the statutory reading set out above, further detail about those same text communications would not change their classification or satisfy the private-action condition. Because Plaintiff identifies no additional telephone call or other amendment that would cure this legal defect, the Court should enter judgment for Honest Pest, dismiss Rush's sole claim with prejudice, and dismiss the derivative putative-class allegations.

**III. CONCLUSION**

Plaintiff's appellate authorities do not decide § 227(c)(5), and her contrary district-court authorities do not supply the better reading of its text. Congress's original call-or-message distinction, the communication-specific private trigger, and the distinct remedy in subsection (b) support the analysis adopted in *Steidinger*. The later enactments reinforce provision-specific interpretation without making congressional silence dispositive. Honest Pest respectfully requests that the Court grant its Rule 12(c) Motion, enter judgment on the pleadings, dismiss Rush's sole claim with prejudice, and dismiss the derivative putative-class allegations.

---------------------------------- SIGNATURE LINE NEXT PAGE ----------------------------------------

Dated: September 11, 2026

Respectfully submitted,

*/s/ Jonathan L. Slotter*
Jonathan L. Slotter
State Bar No. 24090804
jslotter@slotterlaw.com
1000 Main Street, Suite 2300
Houston, Texas 77002
Telephone: (281) 318-9498

**ATTORNEY FOR DEFENDANT**
**HONEST PEST SERVICES LLC**

## CERTIFICATE OF SERVICE

I certify that on September 11, 2026, the foregoing was filed through the Court's CM/ECF system, which will send notice of filing to all counsel of record.

*/s/ Jonathan L. Slotter*
Jonathan L. Slotter